1    UNITED STATES DISTRICT COURT
2         DISTRICT OF PUERTO RICO

3    CELINÉS QUILES-MARCUCCI, et al.,

4
5         Plaintiffs,                    Civil No. 08-1913 (JAF)

6         v.

7    COOPERATIVA DE AHORRO Y CRÉDITO
8    DE JUANA DÍAZ, INC.,

9         Defendant.
10
11

12                      **OPINION AND ORDER**

13        Plaintiffs, Celinés Quiles-Marcucci, her husband, Oscar

14   Guillermo Rosselló-Rodríguez, and their conjugal partnership, bring

15   this action against Defendant, Cooperativa de Ahorro y Crédito de

16   Juana Díaz. (Docket No. 1.) Plaintiffs seek damages for breaches of

17   the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-

18   12213; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

19   §§ 621-34; and Puerto Rico law. (Id.) Defendant moves for summary

20   judgment per Federal Rule of Civil Procedure 56(c) (Docket No. 9).

21   Plaintiffs oppose (Docket No. 22); Defendant replies (Docket No. 30).

22                             **I.**

23              **Factual and Procedural Synopsis**

24        We derive the following facts from the parties' motions,

25   statements of uncontested material facts, and exhibits. (Docket

26   Nos. 9, 10, 19, 22, 28, 30, 31, 33, 36.)

1       Defendant is a small banking company with thirty-two employees

2    in total, including ten officers and supervisors. (Docket No. 33-3.)

3    Quiles-Marcucci, born on September 25, 1966, began working for

4    Defendant as a cashier in 2000. On July 12, 2005, Defendant promoted

5    her to main cashier and Milagros Quiles became her supervisor. From

6    July through October 2005, Milagros Quiles disparaged Quiles-

7    Marcucci's job performance, claimed that she was too old to work as

8    a cashier, and threatened her with termination on numerous occasions.

9    (Docket No. 17-2 at 8-12; Docket No. 28-2 at 2.) Natasha Torres-Lugo

10   ("Torres"), a former coworker of Quiles-Marcucci, stated that she

11   heard Milagros Quiles occasionally criticize Quiles-Marcucci for her

12   age from July 2006 through 2007. (Docket No. 28-3 at 2-4.) However,

13   Torres could not recall the precise dates of the events, and

14   erroneously insisted that they began when Milagros Quiles started

15   working for Defendant in July 2006. (Id.) Defendant reassigned

16   Quiles-Marcucci as a document manager and control officer inside its

17   vault on October 9, 2005, but she continued to work as a cashier in

18   the cashier's area three or four days each month during periods of

19   peak customer activity. (Docket No. 17-2 at 22.) Quiles-Marcucci

20   reached the age of forty on September 25, 2006.

21      On February 22, 2007, Dr. Ramón Rivera-Morales, of the State

22   Insurance Fund ("SIF"), examined Quiles-Marcucci for an unspecified

23   emotional condition and discharged her to rest at home. (Docket

24   No. 17-3.) On May 18, 2007, Dr. Roberto Rinaldi, Quiles-Marcucci's

Civil No. 08-1913 (JAF)                                                    -3-

1    psychologist, sent a letter to Defendant requesting Quiles-Marcucci's
2    removal from work in the cashier area for reasons of health. (Docket
3    No. 28-4.) Defendant wrote Rinaldi twice for more information on
4    Quiles-Marcucci's condition. In a reply letter to Defendant dated
5    November 6, 2007, Rinaldi explained that Quiles-Marcucci had an
6    emotional condition which she attributed to "a series of problems
7    with her immediate supervisor" and felt "harassed and criticized."
8    (Id.) Despite these difficulties, Quiles-Marcucci was able to
9    continue working. (Docket No. 19-2 at 3.)

10       Quiles-Marcucci received three official reprimands. On
11   January 16, 2007, Milagros Quiles reprimanded Quiles-Marcucci for
12   insubordination and failure to promptly return from lunch break
13   during a peak period for business. (Docket No. 17-6.) On February 26,
14   2007, Héctor Valedón, an officer for Defendant, reprimanded Quiles-
15   Marcucci for an unannounced, extended absence from February 3 through
16   23, 2007, which coincided with a peak period of bank business on
17   February 3, and her failure to coordinate with Defendant to ensure
18   adequate staffing during the peak period. (Docket No. 17-7.) Valedón
19   noted that Quiles-Marcucci had failed to contact Defendant during her
20   absence to explain her situation. (Id.) He further noted that the
21   subsequent note from the SIF at most excused her from work until
22   February 21, 2007, and did not explain her failure to consult
23   Defendant in time to cope with a foreseeable influx of customers.
24   (Id.) On August 13, 2007, Valedón reprimanded Quiles-Marcucci for a

Civil No. 08-1913 (JAF)                                                   -4-

1    breach of protocol in failing to report the disappearance of personal

2    items from her work area, which could have had serious implications

3    for bank security. (Docket No. 17-8.)

4        On September 4, 2007, Defendant assigned Quiles-Marcucci to work

5    under the supervision of Valedón. (Docket No. 17-2 at 23.) Defendant

6    set up a computer terminal inside the vault for her to continue

7    working as a cashier during the periods of peak customer activity.

8    (Id. at 24.) Quiles-Marcucci continued to report to Milagros Quiles

9    during these periods. (Id.) Quiles-Marcucci also received disparaging

10   remarks about her work under Valedón's supervision, who believed that

11   she was malingering her symptoms, said that she was "rowing towards

12   the opposite side" and could be terminated, and called her old on

13   numerous occasions. (Docket No. 17-2 at 27-28.) At some point,

14   Defendant transferred Quiles-Marcucci to work inside an off-site

15   warehouse. (Docket No. 19-2.) Her duties in retrieving files did not

16   change with the transfer. (Docket No. 28-3 at 7, 9.) Quiles-Marcucci

17   briefly mentions an alternative to her last position, but does not

18   explain how she was qualified for it, what duties it entailed, or why

19   she preferred the other assignment over her last position. (Docket

20   No. 19-2 at ¶ 29.)

21       Quiles-Marcucci allegedly received a lesser Christmas bonus and

22   salary increase than two younger employees at some unspecified time

23   (Docket No. 19-2 at ¶ 28); Defendant contends that any difference in

24   compensation was primarily attributable to Quiles-Marcucci's lesser

1   performance relative to her peers (Docket No. 33-3 at 12-13).

2   Quiles-Marcucci also contends that she complained to Defendant about

3   the harassment by Milagros Quiles and Valedón in 2006 and 2007

4   (Docket No. 19-2 at ¶ 30); Defendant contends that she made no such

5   complaints prior to filing her charges before the Equal Employment

6   Opportunity Commission ("EEOC") (Docket No. 33-4 at 13).

7       On December 10, 2007, Quiles-Marcucci stopped reporting to work

8   to receive treatment for her mental and emotional condition. (Id. at

9   33-35.) On December 12, 2007, medical experts at San Juan Capestrano

10  Hospital diagnosed Quiles-Marcucci with severe mental depression

11  (Docket No. 28-4); Defendant insists it received no notice of this

12  diagnosis (Docket No. 33-4). Quiles-Marcucci has been unable to work

13  because of her depression. (Docket No. 28-3 at 12, 15).

14      On March 11, 2008, Quiles-Marcucci filed a discrimination charge

15  against Defendant before the EEOC, alleging unequal compensation and

16  treatment due to sex, age, and disability discrimination, failure to

17  accommodate her disability, and workplace harassment. (Docket No. 28-

18  4.) On March 20, 2008, Defendant sent Quiles-Marcucci a letter

19  terminating her due to her continued absence from work, and asserting

20  that Defendant had met its legal obligation to keep her position open

21  for one year from her first treatment by the SIF. (Docket No. 17-5.)

22  Defendant replaced Quiles-Marcucci with Milton González, a twenty-

23  four-year-old employee with less seniority. (Docket No. 19-2 at

24  ¶ 38.) Quiles-Marcucci alleges that Torres and González have also

1    stayed on medical leave for over one year but were not terminated by

2    Defendant. (Id. at ¶ 35.) Torres' testimony is silent as to this

3    allegation. (See Docket No. 28-3.) Defendant asserts confidential

4    privilege with respect to its personnel records (Docket No. 33-4 at

5    18). At the time of her discharge, Quiles-Marcucci was still under

6    treatment by the SIF, which had not cleared her for work. (Docket

7    No. 17-2 at 34-35.)

8         On August 18, 2008, Plaintiffs commenced this case in federal

9    court. (Docket No. 1.) On April 6, 2009, Defendant moved for summary

10   judgment (Docket No. 9); Plaintiffs opposed on May 18, 2009 (Docket

11   No. 22); Defendant replied on June 11, 2009 (Docket No. 30).

12                                   **II.**

13              **<u>Summary Judgment under Rule 56(c)</u>**

14        We grant a motion for summary judgment "if the pleadings, the

15   discovery and disclosure materials on file, and any affidavits show

16   that there is no genuine issue as to any material fact and the movant

17   is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

18   A factual dispute is "genuine" if it could be resolved in favor of

19   either party, and "material" if it potentially affects the outcome of

20   the case. <u>Calero-Cerezo v. U.S. Dep't of Justice</u>, 355 F.3d 6, 19 (1st

21   Cir. 2004).

22        The movant carries the burden of establishing that there is no

23   genuine issue as to any material fact; however, the burden "may be

24   discharged by showing that there is an absence of evidence to support

1    the non-movant's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325,

2    331 (1986). The burden has two components: (1) an initial burden of

3    production, which shifts to the non-movant if satisfied by the

4    movant; and (2) an ultimate burden of persuasion, which always

5    remains on the movant. <u>Id.</u> at 331.

6         In evaluating a motion for summary judgment, we view the record

7    in the light most favorable to the non-movant. <u>Adickes v. S.H. Kress</u>

8    <u>& Co.</u>, 398 U.S. 144, 157 (1970). However, the non-movant "may not

9    rely merely on allegations or denials in its own pleading; rather,

10   its response must . . . set out specific facts showing a genuine

11   issue for trial." Fed. R. Civ. P. 56(e)(2). In rare situations, we

12   may grant summary judgment <u>sua sponte</u>, provided that discovery has

13   sufficiently progressed to determine relevant facts and the target

14   has at least ten days' notice to contest the impending judgment.

15   <u>Stella v. Town of Tewksbury</u>, 4 F.3d 53, 55-56 (1st Cir. 1993).

16                                **III.**

17                              **<u>Analysis</u>**

18   **A.   <u>Statute of Limitations</u>**

19        Defendant contends that the relevant statute of limitations bars

20   all claims under the ADA and ADEA. (Docket No. 9.) Plaintiffs counter

21   that their claims met the 300-day limit. (Docket No. 22.)

22        In Puerto Rico, a plaintiff under the ADA must file a charge

23   with either the EEOC or the Puerto Rico Anti-Discrimination Unit

24   ("ADU") within 300 days of an illegal employment action. 42 U.S.C.

1    § 2000e-5(e)(1); 29 C.F.R. § 1601.74. However, as to claims for

2    hostile work environment, the "continuing violation doctrine" allows

3    a plaintiff to incorporate allegations that predate the limitations

4    period if they "are part of the same unlawful employment practice and

5    at least one act falls within the time period." Nat'l R.R. Passenger

6    Corp. v. Morgan, 536 U.S. 101, 117, 122 (2002).

7         In the instant case, as Plaintiffs filed their charge with the

8    EEOC on March 11, 2008, the 300-day period bars all claims arising

9    from employment practices predating May 16, 2007. The only exception

10   relates to continual workplace abuse motivated by discrimination

11   which commenced prior to, but continued into, the 300-day period.

12   See Morgan, 536 U.S. at 122. Therefore, we need only address

13   employment actions that have occurred since May 16, 2007, such as

14   Defendant's response to Rinaldi's letter dated May 18, 2007, and

15   Quiles-Marcucci's discharge on March 20, 2008, unless the conduct

16   relates to a hostile work environment targeting Quiles-Marcucci for

17   her disability or age.

18   **B.   Claims under ADA**

19        Defendant argues that Plaintiffs cannot establish their claims

20   under the ADA as a matter of law. (Docket No. 9.)

21        **1.   Adverse Employment Action**

22        To establish a claim for an adverse employment action under the

23   ADA, a plaintiff must prove that she was (1) disabled under the ADA,

24   but (2) "able to perform, with or without reasonable accommodation,

1   the essential functions of her job," and (3) "discharged or adversely

2   affected, in whole or in part, because of her disability." Orta-

3   Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 111

4   (1st Cir. 2006). "A disability under the ADA is defined as (1) a

5   physical or mental impairment that substantially limits one or more

6   of a person's major life activities; (2) a record of having such an

7   impairment; or (3) being regarded as having such an impairment."

8   Sánchez-Figueroa v. Banco Popular de P.R., 527 F.3d 209, 214 (1st

9   Cir. 2008) (citing 42 U.S.C. § 12102(2)). The impairment must have

10   permanent or long-term effect "to be considered substantially

11   limiting within the meaning of the ADA." Id. at 214-15 (citing Toyota

12   Motors Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002)).

13        First, Quiles-Marcucci has adduced no evidence of a long-term

14   impairment prior to Rinaldi's letter to Defendant dated November 6,

15   2007, which explained the need to move Quiles-Marcucci from her

16   previous position on account of her stress. (Docket No. 28-4 at 4.)

17   Although Quiles-Marcucci sought treatment on February 22, 2007, the

18   SIF discharged her to rest at home without diagnosis. (Docket No. 17-

19   3.) Similarly, Rinaldi's note to Defendant dated May 18, 2007,

20   requested that Defendant move Quiles-Marcucci away from the cashier's

21   area without specifying a reason. (Docket No. 28-4.) Read in the

22   light most favorable to Quiles-Marcucci, the record suggests a long-

23   term impairment only as of November 6, 2007, which furnishes the

24   basis for a disability. Sánchez-Figueroa, 527 F.3d at 214.

1    At the same time, Defendant did not perceive Quiles-Marcucci to

2    be disabled; on the contrary, Valedón believed that she was

3    falsifying her symptoms. (Docket No. 17-2 at 27-28; see Docket

4    No. 17-7.) Defendant repeatedly sought clarification from Quiles-

5    Marcucci's doctors as to her condition. (Docket No. 33-4 at 12.)

6    As the record suggests no disability before November 6, 2007,

7    the only employment actions that could be attributed to disability

8    discrimination are Quiles-Marcucci's lesser compensation at

9    Christmastime in 2007 and her termination in March 2008. Sánchez-

10   Fiqueroa, 527 F.3d at 214. Nevertheless, Quiles-Marcucci suffered

11   from severe mental handicaps at the time of her termination (Docket

12   No. 28-3 at 12, 15), had not reported for work for three months prior

13   to her termination, insists that she is incapable of working (Docket

14   No. 19 at 16), and has not been cleared for work by the SIF (Docket

15   No. 17-2 at 34-35). Therefore, Quiles-Marcucci cannot show that she

16   was able to perform the essential functions of her position.

17   Accordingly, she has no case for adverse employment action for

18   disability discrimination. See Orta-Castro, 447 F.3d at 111.

19        **2.   Hostile Work Environment**

20        To establish a claim for a hostile work environment due to

21   disability discrimination, a plaintiff must show "that [s]he was

22   (1) disabled, (2) that [s]he was subjected to a hostile environment,

23   and (3) that the hostility was directed at [her] because of [her]

24   disability." Quiles-Quiles v. Henderson, 439 F.3d 1, 5 (1st Cir.

1    2006). To be deemed hostile, a workplace must have been "permeated

2    with discriminatory intimidation, ridicule, and insult that [was]

3    sufficiently severe or pervasive to alter the conditions . . . of

4    [the plaintiff's] employment and create an abusive working

5    environment." Id. at 7 (quoting Harris v. Forklift Sys., Inc., 510

6    U.S. 17, 21 (1993)) (internal quotation marks omitted). Relevant

7    factors include "the severity of the conduct, its frequency, and

8    whether it unreasonably interfered with the victim's work

9    performance." Id. (citing Harris, 510 U.S. at 23).

10        As aforementioned, Quiles-Marcucci has only established her

11    disability as of November 6, 2007. The relevant inquiry, then, is

12    whether a hostile environment existed in the month-long period

13    between Rinaldi's letter to Defendant and her discontinuation of work

14    on December 10, 2007. The submissions do not suggest a daily pattern

15    of abuse during this brief span. Although Quiles-Marcucci asserts in

16    her sworn statement that Milagros Quiles threatened her daily with

17    termination due to her illness (Docket No. 19-2 at ¶ 26), this

18    statement postdates and conflicts with her deposition testimony, in

19    which she blamed Milagros Quiles only for calling her old during July

20    through October 2005 (Docket No. 17-2 at 7-12). We need not credit

21    self-serving sworn statements which are inconsistent with prior

22    deposition testimony. See Orta-Castro, 447 F.3d at 110. Furthermore,

23    Quiles-Marcucci claims that Defendant transferred her to an isolated

24    warehouse for significant periods of time prior to her last day of

1    work which, if true, directly contradicts her allegations against

2    Milagros Quiles in late 2007. (See Docket No. 19-2 at ¶¶ 17-19, 26.)

3    Accordingly, Quiles-Marcucci has failed as a matter of law to prove

4    a case for workplace harassment due to her disability. See Quiles-

5    Quiles, 439 F.3d at 5 (requiring severe and pervasive abuse).

### 3.   Retaliation

7        To prove retaliation due to a plaintiff's complaint against, or

8    involvement in investigating, disability discrimination, she must

9    show "that (1) [s]he engaged in protected conduct; (2) [s]he

10   experienced an adverse employment action; and (3) there was a causal

11   connection between the protected conduct and the adverse employment

12   action." Id. at 8. Protected conduct includes opposition to

13   disability discrimination and filing a charge against such conduct.

14   42 U.S.C. § 12203(a). "The adverse employment action requirement may

15   be satisfied by showing the creation of a hostile work environment or

16   the intensification of a pre-existing hostile environment." Quiles-

17   Quiles, 439 F.3d at 8. "[T]he causation element may be established by

18   evidence that there was a temporal proximity between the behavior in

19   question and the employee's complaint." Id.

20       In the case at bar, Quiles-Marcucci contends that Defendant

21   retaliated against her by (1) making negative statements because of

22   her complaints against harassment and discrimination, and

23   (2) terminating her because of her discrimination charge before the

24   EEOC. (Docket No. 22 at 13.) We note that Quiles-Marcucci also

1  requested accommodation from Defendant on May 18, 2007 (Docket

2  No. 28-4), which could have been the basis for retaliatory harassment

3  or discharge.

4       First, in support of her claim for retaliatory statements in

5  response to her complaints, Quiles-Marcucci refers to her own sworn

6  statement and Torres's deposition testimony. (Id.; see Docket No. 19

7  at ¶ 10.) As noted above, we may disregard Quiles-Marcucci's sworn

8  statement due to its discrepancies with her prior deposition. See

9  supra part III-B-2. Torres' testimony is ambiguous as to the

10 frequency, duration, and severity of negative comments by Valedón and

11 Milagros Quiles, as well as the time period in which such comments

12 were supposedly made. (See Docket No. 28-3 at 8-9.) Without a

13 temporal reference or indication of frequency and severity of

14 Defendant's conduct, Plaintiffs cannot establish a causal

15 relationship between the statements and Quiles-Marcucci's complaints,

16 and hence no claim exists for retaliation by means of harassment.

17 See Quiles-Quiles, 439 F.3d at 8.

18      Second, with respect to the claim for retaliatory discharge,

19 Defendant argues that it must prevail as it has a legitimate, non-

20 discriminatory reason for terminating Quiles-Marcucci. (Docket No. 9

21 at 13.) Under the McDonnell Douglas burden-shifting framework,

22              a plaintiff must first establish a prima facie
23              case of discrimination.  The burden then shifts
24              to the employer to articulate a legitimate,
25              nondiscriminatory reason for its employment
26              action.  If the employer meets this burden, the

1        presumption of intentional discrimination
2        disappears, but the plaintiff can still prove
3        disparate treatment by, for instance, offering
4        evidence demonstrating that the employer's
5        explanation is pretextual.

6   Raytheon Co. v. Hernandez, 540 U.S. 44, 49 n.3 (2003) (citing

7   McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)) (internal

8   citation omitted). As Quiles-Marcucci's termination swiftly followed

9   her complaint before the EEOC, there is a strong inference of causal

10  relationship between the two events and, thus, Plaintiffs could

11  establish a prima facie claim for retaliatory discharge. See 42

12  U.S.C. § 12203(a); Quiles-Quiles, 439 F.3d at 8.

13       Defendant argues, however, that it discharged Quiles-Marcucci

14  because she stopped working and Defendant could terminate workers on

15  disability leave upon the expiration of a legally-prescribed one-year

16  period. (Docket No. 9 at 13-14.) Plaintiff contends that (1) the

17  cited reason is pretextual, as other workers who had overstayed their

18  medical leave were not discharged (Docket No. 22), and (2) the

19  twelve-month period had not elapsed at the time of her termination,

20  as it should have been re-computed from the commencement of a second

21  work-related "accident" on December 10, 2007 (Docket No. 36).

22       Under Puerto Rico law, employers must reserve the positions of

23  disabled workers for one full year before terminating them. 11

24  L.P.R.A. § 203(q) (2007). This period computes "from the date of the

25  onset of the disability." § 203(q)(1). The period "cannot be

26  interrupted in any way." See Alvira-Cintrón v. SK & F Labs. Co., 142

1    P.R. December. 803 (1997) (interpreting twelve-month period in 11

2    L.P.R.A. § 7) (Docket No. 37); see also id. (Corrada del Río, J.,

3    concurring) (extending same reasoning to reserve period in 11

4    L.P.R.A. § 203(q)).  Terminating workers for failing to return to

5    work after the end of this statutory period rebuts liability under

6    the ADA. Corujo-Martí v. Triple-S, Inc., 519 F. Supp. 2d 201, 205-06

7    (D.P.R. 2007).

8            Quiles-Marcucci sought treatment by the SIF for the first time

9    on February 22, 2007. (Docket No. 17-3.) Defendant terminated her by

10   letter on March 20, 2008, noting that more than one year had elapsed

11   since her initial treatment and she remained on indefinite medical

12   leave. (Docket No. 17-5.) Even if we were to accept that Defendant

13   has failed to discharge other workers who stayed on medical leave

14   past the one-year statutory period (see Docket No. 22 at 13), such

15   inconsistent treatment does not by itself render Defendant's

16   proffered excuse pretextual, see Freadman v. Metro. Prop. & Cas. Ins.

17   Co., 484 F.3d 91, 101 (1st Cir. 2007) (refusing to find pretext where

18   defendant deviated from its disciplinary policy). On the contrary,

19   Defendant had been deprived of Quiles-Marcucci's services for over

20   three months, and Quiles-Marcucci was incapable of returning to work

21   (see Docket No. 17-2 at 34-35). Lastly, Plaintiffs' belated attempt

22   to invoke, without evidence, a separate work-related injury on

23   December 10, 2007, to recompute the one-year period must fail. (See

Civil No. 08-1913 (JAF)                                           -16-

1    Docket No. 36.) Therefore, Plaintiffs cannot establish a claim for

2    retaliatory discharge. <u>See</u> <u>Raytheon Co.</u>, 540 U.S. at 49 n.3.

3         Third, a claim could lie under the ADA for retaliation due to a

4    plaintiff's request for reasonable accommodation. <u>Wright v. CompUSA,</u>

5    <u>Inc.</u>, 352 F.3d 472, 477-78 (1st Cir. 2003). We note, however, that

6    the preceding reasoning pertaining to retaliatory harassment and

7    discharge applies, <u>mutatis mutandis</u>, to foreclose Plaintiffs' claim

8    for retaliation for requesting accommodation.

9         **4.   <u>Failure to Accommodate</u>**

10        To establish a claim for a defendant's failure to accommodate a

11   plaintiff's disability, a plaintiff must show "that (1) [s]he was

12   disabled within the meaning of the ADA, (2) [s]he was able to perform

13   the essential functions of the job with or without a reasonable

14   accommodation, and (3) [that the defendant], despite knowing of [her]

15   disability, did not reasonably accommodate it." <u>Tobin v. Liberty Mut.</u>

16   <u>Ins. Co.</u>, 433 F.3d 100, 107 (1st Cir. 2005). As noted above, the

17   record establishes Quiles-Marcucci's disability only after

18   November 6, 2007. Rinaldi's letter of May 18, 2007, merely requested

19   that Defendant remove Quiles-Marcucci from working in the cashier's

20   area of the bank without suggesting that she suffered from a long-

21   term ailment. (Docket No. 28-4.) Therefore, the issue is whether

22   Defendant made reasonable accommodations for Quiles-Marcucci between

23   November 6, 2007, and her departure on December 10, 2007.

1      As of September 4, 2007, Quiles-Marcucci had been transferred to

2  work inside the vault (Docket No. 17-2 at 23-24), and Defendant later

3  assigned her to work at a distant warehouse (Docket No. 19-2). While

4  these accommodations may not be ideal, without a stronger inference

5  of an illegal motive, we refuse to second-guess Defendant's business

6  decision in resorting to these two locations to comply with Rinaldi's

7  recommendations. See Petitti v. New Eng. Tel. & Tel. Co., 909 F.2d

8  28, 31 (1st Cir. 1990) (refusing to second-guess defendant's

9  personnel decisions to find pretext). We note that Defendant has a

10  small operation with thirty-two employees in total, only twenty-two

11  of whom are in non-managerial positions. (Docket No. 33-3 at 12.)

12  Therefore, Defendant had limited options in reassigning Quiles-

13  Marcucci to satisfy her needs. While Quiles-Marcucci refers to a

14  possible alternative, she does not explain why this other position

15  would have been preferred over her last assignment. (See Docket No.

16  19-2 at ¶ 29.) Lastly, while Quiles-Marcucci primarily blames

17  Milagros Quiles for her disability (Docket No. 19-2), Defendant need

18  not reassign her to another supervisor as a reasonable accommodation.

19  See EEOC Notice No. 915.002 (October. 17, 2002) (Question 33). As

20  Plaintiffs cannot show that Defendant's accommodation was

21  unreasonable, they cannot prove a case for failure to accommodate.

22  See Tobin, 433 F.3d at 107.

C.   **Claims under ADEA**

   Defendant argues that Plaintiffs cannot establish their claims under the ADEA as a matter of law. (Docket No. 9.)

   1.   **Age Discrimination**

   The ADEA creates a claim against employers for age discrimination. 29 U.S.C. §§ 623(a), 626(c). In the absence of direct proof of discriminatory motive, a plaintiff must show that she (1) was at least forty years old; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) that the benefit or position denied to the plaintiff was given to a younger person with similar qualifications. Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 218-19 (1st Cir. 2008).

   Quiles-Marcucci alleges that Defendant discriminated against her on the basis of age by "drastically decreasing all of her functions and duties" and demoting her from her prior position. (Docket No. 1 at 4.) The statute of limitations limits our analysis to changes to her position after May 16, 2007. See supra part III-A. Prior to her discontinuation of work on December 10, 2007, Quiles-Marcucci's position as a document management and control officer inside the vault did not change, except insofar as she was transferred to the warehouse at some point. (Docket No. 19-2 at ¶¶ 5, 17.) She continued to work as a cashier notwithstanding her position. (Id. at ¶¶ 15, 17, 20.) Defendant did not significantly alter Quiles-Marcucci's tasks in

1    organizing and retrieving documents in moving her from the vault to

2    the warehouse. (Docket No. 28-3 at 7, 9.)

3          Quiles-Marcucci also asserts that Defendant decided to pay

4    greater Christmas bonuses and salary increases to other, younger

5    employees, but does not specify the time at which this disparity

6    occurred. (Docket No. 19-2 at ¶ 28.) Quiles-Marcucci asserts that the

7    bulk of Defendant's discriminatory conduct occurred in 2005 (Docket

8    No. 28-2 at 2), but the statute of limitations bars claims arising

9    from conduct prior to May 16, 2007, <u>see</u> <u>supra</u> part III-A.

10   Furthermore, Quiles-Marcucci presents no evidence that the other

11   employees had similar qualifications; indeed, Defendant attests that

12   these other workers outperformed Quiles-Marcucci (Docket No. 33-3 at

13   12-13). Therefore, Quiles-Marcucci cannot attribute any wage

14   differential to her status as a protected individual over the age of

15   forty. Accordingly, Plaintiffs cannot establish a claim for age

16   discrimination on the basis of demotion, drastic change in duties, or

17   difference in compensation. <u>See</u> <u>Arroyo-Audifred</u>, 527 F.3d at 218-19.

18         **2.   <u>Hostile Work Environment</u>**

19         The ADEA also provides a claim for a hostile work environment

20   that discriminates against a plaintiff on the basis of age. <u>Rivera-</u>

21   <u>Rodríguez v. Frito Lay Snacks Caribbean</u>, 265 F.3d 15, 24 (1st Cir.

22   2001). To establish such a claim, a plaintiff must show that the

23   severity and pervasiveness of the harassment were sufficient to be

24   objectively abusive, and that she subjectively perceived the

1    environment to be hostile. _Id._ (citing _Landrau-Romero v. Banco_
2    _Popular de P.R._, 212 F.3d 607, 613 (1st Cir. 2000)). "When assessing
3    whether a workplace is a hostile environment, courts look to the
4    totality of the circumstances, including the frequency of the
5    discriminatory conduct; its severity; whether it is threatening or
6    humiliating, or merely an offensive utterance; and whether it
7    unreasonably interferes with the employee's work performance." _Id._
8    (citing _Landrau-Romero_, 212 F.3d at 613). In general, verbal abuse
9    directed at a plaintiff's poor work performance, rather than her age,
10   does not violate the ADEA. _Young v. Will County Dep't of Pub. Aid_,
11   882 F.2d 290, 294 (7th Cir. 1989).

12        As Quiles-Marcucci turned forty on September 25, 2006, the issue
13   is whether there was a pattern of abuse that commenced after that
14   date which continued into the 300-day period beginning May 16, 2007.
15   _See_ 29 U.S.C. § 631(a) (defining threshold age of forty); _Morgan_, 536
16   U.S. at 117, 122 (opining that hostile environment could be
17   continuing violation); _supra_ part III-A.

18        With respect to allegations of verbal abuse by Milagros Quiles,
19   Quiles-Marcucci's own testimony suggests that the bulk of such
20   disparagement took place in 2005, before she attained the age of
21   forty. (Docket No. 17-2 at 8-12.) In an attempt to contradict their
22   own statements, Plaintiffs point to Torres' testimony that Milagros
23   Quiles verbally abused Quiles-Marcucci in 2006. (Docket No. 28-3 at
24   2-4.) However, Torres also believed that Milagros Quiles did not

1    begin working for Defendant until July 2006 (<u>id.</u>), which contradicts

2    Quiles-Marcucci's testimony that Milagros Quiles was her supervisor

3    in 2005 (Docket No. 17-2 at 8-12). Torres' testimony is otherwise

4    devoid of reference to the frequency of such comments and does not

5    suggest that frequent, significant abuse occurred after September 25,

6    2006. (<u>See</u> Docket No. 28-3 at 2-4.)

7         Although Quiles-Marcucci also asserts that Valedón disparaged

8    her for her age, he did not supervise her until September 4, 2007

9    (Docket No. 17-2 at 23-24), thus leaving a brief window of

10   opportunity for verbal abuse prior to December 10, 2007, especially

11   in view of her duties at the warehouse (Docket No. 19-2). Moreover,

12   Torres's testimony sheds little light on the combined abuse by

13   Valedón and Milagros Quiles. (<u>See</u> Docket No. 28-3 at 8-9.) Torres

14   could recall only a few encounters between them and Quiles-Marcucci,

15   and these interactions, while rude, were not threatening and appeared

16   to be directed primarily at Quiles-Marcucci's poor performance and

17   their suspicion that her ailments were false. (<u>See</u> Docket Nos. 17-6,

18   17-7, 17-8.)

19        Furthermore, Quiles-Marcucci insists that she was able to work

20   unimpeded (Docket No. 19-2 at ¶ 8), and that she voluntarily ceased

21   work on December 10, 2007, to seek medical attention (<u>id.</u> at ¶ 23).

22   Accordingly, Plaintiffs cannot establish that Defendant's age-related

23   abuse was sufficiently frequent, severe, threatening, or disruptive

1    of working conditions to sustain their claim. See Rivera-Rodríguez,

2    265 F.3d at 24; Young, 882 F.2d at 294.

3          **3.   Retaliation**

4          Quiles-Marcucci avers that Defendant retaliated against her in

5    response to her complaints to Defendant and her charge before the

6    EEOC. (Docket No. 1.) A plaintiff may sue her employer for

7    retaliation against her opposition to age discrimination. 29 U.S.C.

8    § 623(d). To establish retaliation, a plaintiff must show that

9    (1) she opposed age discrimination at work; (2) she suffered an

10   adverse employment action; and (3) there is a causal connection

11   between the protest and the adverse action. Id.; Ramírez Rodríguez v.

12   Boehringer Ingelheim Pharms., Inc., 425 F.3d 67, 84 (1st Cir. 2005).

13         Our previous analysis of retaliatory harassment and discharge

14   under the ADA with respect to Plaintiffs' complaint to Defendant

15   against Milagros Quiles and Valedón and their charge before the EEOC

16   applies, mutatis mutandis, with equal force here. See supra part III-

17   B-3. Defendant's alleged acts and omissions subsequent to Plaintiff's

18   complaints on the basis of disability and age discrimination are

19   identical for the purposes of both the ADA and ADEA. See id.

20   Moreover, the rules pertaining to Defendant's potential liability

21   under the ADA and ADEA are virtually the same. Compare Quiles-Quiles,

22   439 F.3d at 8 with Ramírez Rodríguez, 425 F.3d at 84. Accordingly,

23   Plaintiffs cannot establish a claim for retaliation under the ADEA.

24   See Ramírez Rodríguez, 425 F.3d at 84.

1       **4.   Disparate Impact**

2           Plaintiffs briefly mention the grounds in their complaint for a

3       claim for disparate impact under the ADEA. (See Docket No. 1.) Under

4       the ADEA, a plaintiff could state a claim for disparate impact if she

5       could point to specific employment practices that lead to statistical

6       disparities between people over the age of forty and those below the

7       protected age. See Meacham v. Knolls Atomic Power Lab., 128 S. Ct.

8       2395, 2405 (2008). Defendant does not address this claim in its

9       motion for summary judgment. (See Docket No. 9.)

10          It appears from the record, however, that Plaintiffs never

11      exhausted this claim by incorporating it into their charge before the

12      EEOC. (See Docket No. 28-4.) Moreover, neither party has adduced

13      facts to suggest the existence of policies or general practices by

14      Defendant which uniformly discriminate against workers over the age

15      of forty. (See generally Docket Nos. 10, 19, 31.) Therefore, we order

16      Plaintiffs to explain why we should not grant summary judgment

17      against them on their claim for disparate impact under the ADEA.

18                                      **IV.**

19                                  **Conclusion**

20          Accordingly, we hereby **GRANT** Defendant's motion for summary

21      judgment (Docket No. 9) and **DISMISS** all federal claims, except for

22      disparate impact under the ADEA, **WITH PREJUDICE.** We **ORDER** Plaintiffs

23      to **SHOW CAUSE** by **July 17, 2009,** as to why summary judgment is

Civil No. 08-1913 (JAF)                                              -24-

1    inappropriate against their remaining federal claim for disparate

2    impact under the ADEA.

3          **IT IS SO ORDERED.**

4          San Juan, Puerto Rico, this 30th day of June, 2009.

5                                    S/José Antonio Fusté
6                                    JOSE ANTONIO FUSTE
7                                    Chief U.S. District Judge